IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BRIAN MICHAEL NERO,<br>    Plaintiff | * | |
| | * | |
| v. | | Civil No. AMD 06-1687 |
| | * | |
| BALTIMORE COUNTY, MD, et al.,<br>    Defendants | * | |
| | *** | |

MEMORANDUM OPINION

Shortly after midnight on July 6, 2003, defendants Seung Pak and Jai Song, who are Baltimore County police officers, responded to a 911 report of a disturbance at the home of plaintiff Brian Nero. Officers Pak and Song were greeted at the door by Nero's wife, entered the residence, and proceeded to a bedroom, where they discovered plaintiff, naked, inside an attic-like storage area with a handgun. The officers requested the help of a tactical unit and used their weapons to detain Nero until other units arrived. Nero was eventually taken into custody and committed involuntarily as a danger to himself and/or others to a psychiatric hospital ward. He was released after several days in the hospital; he was never formally prosecuted as a result of the July 6 incident.

Feeling aggrieved by these events, Nero filed this action pursuant to 42 U.S.C. § 1983 contending that numerous Baltimore County police officers violated the Fourth Amendment by illegally entering his home, detaining him there, using a Taser device to subdue him, transporting him to the hospital, and effecting his involuntary commitment for a psychiatric

evaluation.[1] By prior order, the court limited discovery to the claims asserted against officers Pak and Song, with leave to amend the complaint, if plaintiff so desired, to join other named officers.[2] (No further motion to amend has been filed.) Discovery has been completed and

---

[1] Defendant Baltimore County moved to dismiss Nero's original complaint and before the court could rule on that motion, Nero filed an amended complaint. Defendants Pak and Song then filed a motion to dismiss the complaints and the court conducted a hearing on that motion. The motion was granted with leave to file a further amended complaint, which Nero timely filed. The second amended complaint (styled by plaintiff as a "first amended complaint"), like the other complaints, names as defendants Baltimore County, Officer Pak, Officer Song, and "Unknown Police Officers of Baltimore County, Maryland." As mentioned in text, pursuant to an earlier order of this court, proceedings were stayed as to defendants other than officers Pak and Song, with leave to amend, while discovery proceeded as to those two defendants. *See infra* n. 2. Plaintiff has not sought further to amend his complaint and has explicitly abandoned certain Fourth Amendment claims.

[2] The March 13, 2007, Letter Order stated as follows:

> Now pending in this § 1983 action are defendants' motion to dismiss or in the alternative for summary judgment and plaintiff's motion for discovery. A hearing was held on the original motion to dismiss. The papers have been read and considered and no further hearing is needed; I have elected to rule in this informal manner.
>
> I am frank to say, as I think I indicated in no uncertain terms at the hearing, that plaintiff appears at first glance to be flirting with Rule 11 sanctions here. What I mean is that the version of the events giving rise to this case that is offered by plaintiff is so inherently incredible that one has to wonder whether plaintiff has simply chosen to say whatever is necessary to defeat the motion to dismiss and to defeat the early invocation of qualified immunity by the defendant officers. It is clear that the amended complaint is artfully drafted, leaving out more material facts than it includes. For example, one would be inclined to infer that the very fact that a "standoff" (involving a *naked*, *armed* individual) with police that lasted for *five hours* is a powerful indication that the citizen was not acting rationally but was behaving in a manner that was seriously threatening to police and others. Yet, plaintiff's theory here is that the five hour standoff is emblematic of *unconstitutional behavior by the responding officers*. Furthermore, plaintiff apparently intends to ask a jury (if

(continued...)

now before the court is the motion for summary judgment filed by officers Pak and Song. The issues have been thoroughly briefed and a further hearing is not necessary. For the reasons that follow, the motion for summary judgment shall be granted.

I.

---

[2](...continued)
the case gets that far) to believe that the responding officers *made up out of whole cloth* their assertion that his wife (who, curiously, is not joined as a plaintiff) had advised them that he was a suicide threat, *notwithstanding the fact that the health care professionals who later examined the plaintiff indeed concluded that he was a danger to himself and confined him in the hospital for six days*. The assertions by plaintiff, now made under oath, manifestly lack facial plausibility.

That said, as we all know, "truth is sometimes stranger than fiction." *Shreve v. Sears, Roebuck & Co.,* 166 F.Supp.2d 378, 386 (D.Md.2001)(Davis, J.). Accordingly, I am hereby granting in part and denying in part defendants' motion to dismiss, and granting the motion for discovery. In particular, I shall permit the case to proceed *on the following claims only* at this time and only against the two named individual officers, i.e., the *Monell* claims against Baltimore County are stayed pending further order of this court (*see International Ground Transp. v. Mayor And City Council Of Ocean City*, 475 F.3d 214, 219-21 (4th Cir. 2007)):

    (1) The alleged illegal entry into plaintiff's home (as violative of the Fourth Amendment);
    (2) The alleged unreasonableness of the "detention" of the plaintiff in his home (as violative of the Fourth Amendment);
    (3) The alleged use of excessive force (as relates to the taser round that actually embedded in plaintiff's chest, not the round that did not embed into plaintiff)(as violative of the Fourth Amendment); and
    (4) The alleged use of excessive force (as it related to the use of handcuffs) (as violative of the Fourth Amendment).

*See* Docket No. 24; *see also* Docket No. 28 (allowing amended complaint "if same is warranted").

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). For purposes of summary judgment, a fact is material if, when applied to the substantive law, it affects the outcome of the litigation. *Id.* at 248. Summary judgment is also appropriate when a party "fails to make a showing sufficient to establish the existence of some element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Consideration of the present motion also requires application of the two-pronged analysis of the defendants' assertion of qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001). In assessing the officers' claim of qualified immunity, "the court must first determine if the pleaded facts demonstrate that the defendant's conduct violated a constitutional right." *Blankenship v. Manchin*, 471 F.3d 523, 528 (4th Cir. 2006). If a constitutional violation has occurred, the second step requires the court to consider whether the right was clearly established, measured by whether a reasonable officer would have believed the conduct to be lawful under the same or similar circumstances. *Saucier*, 533 U.S. at 201-02. Thus, where an officer has invoked qualified immunity and relies on it in a motion for summary judgment, to deny the motion, the court must be persuaded that the non-movant projects sufficient evidence: (1) that the officer actually committed a constitutional violation, and (2) that the defendant's conduct was objectively unreasonable under well-settled law.

*Henry v. Purnell*, No. 06-1523, 2007 WL 2729126, at 3-4 (4th Cir. Sept. 20, 2007).

II.

Of course, as always, the cardinal historical facts are viewed in the light most favorable to plaintiff. In this case, although plaintiff has made some conclusory allegations regarding the character of the officers' actions, as described below, the summary judgment record shows that plaintiff has not succeeded in generating a genuine issue of material fact as to either prong of the two-pronged test for qualified immunity.

Late on July 5, 2003, the plaintiff's neighbor, Ms. Hiss, became concerned for Mrs. Nero's safety when she heard a loud and violent argument through the party wall between the Neros' townhouse and her own. *Dep. of Irma Hiss at* 13. As the argument continued, Ms. Hiss enlisted the help of another neighbor, Mr. Bayne, who came to Ms. Hiss's townhouse and also heard the noises emanating from the Nero home. *Dep. of Dennis Bayne at 9*. Both Ms. Hiss and Mr. Bayne were concerned about the disturbance at the Nero home and decided to call 911. (The cause for concern cannot be overstated. During their depositions, Ms. Hiss and Mr. Bayne stated "[i]t was loud;" "[i]t was violent;" "[i]t was too upsetting, frankly, to listen to;" "I didn't know whether Mrs. Nero was being thrown into the wall;" "you could hear a lot of yelling, a lot of screaming . . . a lot of crying;" and "that's when I heard [plaintiff] make a statement about getting his gun." *Dep. of Irma Hiss at 13, 16; Dep. of Dennis Bayne at 9*.)

In response to the neighbors' 911 call, officers Pak and Song were dispatched to the Nero home. Although the plaintiff contends that the officers approached the scene expecting

a simple noise violation rather than the suspected physical altercation that Ms. Hiss and Mr. Bayne reported, this interpretation of the record is untenable. The numerous police reports regarding this event indicate they clearly faced an element of potential physical harm.[3] The plaintiff focuses on Officer Song's testimony, given in a deposition taken over three years after the incident, in which the officer indicated that he was not aware of any potential violence when he arrived at the Nero home. *Dep. of Jai Song at 6-8.* However, Officer Pak clearly knew that he and his partner were entering a situation where "a male was, I think, throwing the female against the wall." *Dep. of Seung Pak at 7.*

Officers Pak and Song responded to the incident at the Nero residence as partners working in concert, and as such, the possibility of violence known to Pak is imputed to Song. *See, e.g., U.S. v. Woods*, 544 F.2d 242, 260 (6th Cir. 1976) (noting that courts will "mutually impute the knowledge of all the agents working together on the scene and in communication with each other"); *Daniels v. U.S.*, 393 F.2d 359, 361 (D.C. Cir. 1968) ("There is no requirement that the arresting officer have sufficient firsthand knowledge to constitute

---

[3] The incident is described throughout the reports as "suicidal subject," "suicide attempt," and "check location (possible domestic incident)." *Decl. of Howard B. Gersh,* Attach. 1-4 (Data Sheet for Maria Nero, Data Sheet for Brian Nero, Miscellaneous Crime and Incident Report and Supplement); *see also Decl. of Morris Greenberg,* Attach. (Hostage Negotiation Team Report). Plaintiff argues that the police reports are inadmissible under the Federal Rules of Evidence, either because they contain hearsay or because they would be offered for the irrelevant purpose of proving the officers' subjective state of mind. *Pl.'s Opp'n to Def.'s Mot. to Dismiss, or in the Alternative, for Summ. J. at 1-3*. The court disagrees. The police records are plainly business records, *see* FED. R. EVID. 803(6), and, in addition, they may be considered for the nonhearsay purpose of proving the effect the information would have had on reasonable officers who received it, i.e., to show that a reasonable officer would reasonably anticipate that someone in the residence may be injured or otherwise in urgent need of assistance, because they were informed that a violent argument was occurring at the house.

probable cause."); *U.S. v. Colon*, 250 F.3d 130, 135 (2nd Cir. 2001) ("Under the collective or imputed knowledge doctrine, an arrest or search is permissible where the actual arresting or searching officer lacks the specific information to form the basis for probable cause or reasonable suspicion but sufficient information to justify the arrest or search was known by other law enforcement officials initiating or involved with the investigation.").

Upon their arrival, the officers encountered Mrs. Nero at the front door and entered. While Officers Pak and Song dispute her testimony regarding the issue of consent, Mrs. Nero testified by affidavit that "[t]he Officers pushed past me and entered the house without asking for, or being given, permission to enter." *Aff. of Maria Nero*. This statement is plainly inconsistent with the contemporaneous police reports and Ms. Hiss's testimony that "[Mrs. Nero] that night two or three times thanked me for calling the police, said that it was long overdue." *Dep. of Irma Hiss at 24*. Regardless of whether a factfinder accepted Mrs. Nero's version of the events or the officers' account (that they entered the Nero residence with permission), the result here is the same.[4]

Upon entering the Nero residence, the officers (together with Mrs. Nero) proceeded to the bedroom. *Dep. of Brian Nero at 35*. At this point, the officers encountered Mr. Nero, nude and armed with a handgun, holed up in an unfinished storage area off the loft above the

---

[4] Notably, the propriety of the responding officers' entry into the Nero home was never asserted as a constitutional violation in the original complaint in this case. It was only after the court raised the issue sua sponte at the hearing on the motion to dismiss that, in the amended complaint, plaintiff first asserted a claim based on the alleged illegal entry into the home. Mrs. Nero is not named as a plaintiff here, although, if the officers illegally entered her home, her rights would have been violated every bit as much as her husband's rights.

bedroom. *First Am. Compl. at 3*. The officers then drew their weapons and used them to detain Mr. Nero while calling for and awaiting the tactical unit. *Decl. of Howard B. Gersh,* Attach. 3, 4 (Miscellaneous Crime and Incident Report and Supplement).

### III.

For the reasons set forth below, the court concludes as a matter of law that plaintiff has failed to project evidence sufficient to demonstrate that his Fourth Amendment right to be free of unreasonable searches and seizures was violated by the events of July 6, 2003. For this reason, and for the further reason that the actions of the defendant officers would have been the very actions taken by any reasonable officer under the same or similar circumstances, the record establishes as a matter of law that they are entitled to qualified immunity.

### A.

A warrantless entry does not offend the Fourth Amendment if the police are assisting with or preventing a serious injury, *Brigham City, Utah v. Stuart*, 126 S. Ct. 1943, 1947 (2006), or if a legal occupant of the premises consents to the entry, *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). Indeed, "it would be silly to suggest that the police would commit a tort by entering, … to determine whether violence (or threat of violence) has just occurred or is about to (or soon will) occur." *Georgia v. Randolph,* 547 U.S. 103, 118 (2006). Even viewed in the light most favorable to plaintiff, the facts indicate that, although the officers lacked a warrant, their entry into the Nero home under the circumstances described above does not give rise to civil liability. Put differently, their entry was either

reasonable (and therefore consonant with the Fourth Amendment) or, at the least, a reasonable officer acting under the same or similar circumstances certainly would not have believed the entry was contrary to well-settled Fourth Amendment standards.

Consent to a warrantless search can be inferred from an occupant's conduct. *U. S. v. Hylton,* 349 F.3d 781, 786 (4th Cir. 2003) (citing cases). Accordingly, Mrs. Nero's surprisingly limited testimony that she did not give *oral permission* for the officers to enter is not sufficient to undermine the officers' entitlement to qualified immunity. Moreover, even if the plaintiff could establish by a preponderance of the evidence the absence of explicit and implicit consent, viewing the facts objectively, the officers were still entitled to enter to aid an injured, or potentially injured, occupant. Plainly, the officers' entry into the Nero residence was not an aggressive evidence-gathering mission in connection with a criminal investigation; rather it was the reasonable response to a 911 call indicating possible violence and therefore not a violation of Mr. Nero's constitutional rights.

B.

Rather remarkably, plaintiff suggests that the officers' decision to detain him constitutes an unlawful seizure of his person. Although plaintiff eventually put down his weapon, and therefore claims that he was then "unarmed," he remained in the small storage area, with the weapon in easy reach, refusing the officers' orders that he come out. *First Am. Compl. at 3*. It is entirely objectively reasonable for a police officer to act to protect himself, his partner, and any bystanders when confronted with a nude person, refusing to leave a small storage area, with access to a handgun. The plaintiff has failed to generate any genuine issue

of material fact and the record demonstrates that the conduct of officers Pak and Song can only be construed as objectively reasonable. (Indeed, it is even a stretch to deem the "stand-off" which resulted from Nero's refusal to come out of the storage area a "detention" of him by the officers.)

Mr. Nero, with knowledge of his own secret intentions on that night, may be sincerely aggrieved and consider the officers' response unnecessary and excessive. Nonetheless, police officers cannot be expected to read minds. They can only be required to act reasonably based on the information available to them.

IV.

In light of the information that was available to the officers when they arrived on the scene, their action in entering the Nero home was objectively reasonable, and any reasonable officer would not have acted differently from the manner in which defendants acted. Based on what the officers observed upon entering the home, the decision to "detain" plaintiff was also plainly objectively reasonable. Accordingly, the motion for summary judgment shall be granted.[5]  An order follows.

Filed: September 27, 2007                         __/s/_____
                                                  ANDRE M. DAVIS
                                                  United States District Judge

---

[5] There is no basis on which Baltimore County might be held liable for the actions of the officers in this case. Accordingly, judgment shall be granted in favor of all defendants.